IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:20-cv-03018-CNS-MEH

DAVID HOFFSCHNEIDER,

     Plaintiff,

v.

JILL MARSHALL, Chief of the Colorado Mental Health Institute at Pueblo, individually in her official capacity,
DOCTOR SOYEUN CHU, in her official and individual capacity,
DOCTOR LENNARD ABLE, in his official and individual capacity,
DOCTOR DAVID HINCKLE, in his official and individual capacity,
DOCTOR TERESA WILLIAMS, in her official and individual capacity,
DOCTOR RICHARD POUNDS, in his official and individual capacity,
DOCTOR JULIE MEEKER, in her official and individual capacity,
DOCTOR VICTORIA TRAPP, in her official and individual capacity,
AARON WILLIAMS, in his official and individual capacity,
JADE BULLARD, in her official and individual capacity,
CARA SILLA, in her official and individual capacity,
JEFF WITT, in his official and individual capacity,
REBECCA HEARST, in her official and individual capacity,
TED SMITH, in his official and individual capacity,
ANNABELLE FLOREZ, in her official and individual capacity,
JULIE REYES, in her official and individual capacity,
JULIE GRAVES, in her official and individual capacity,
TIFFANY LUNA, in her official and individual capacity,
JAMES HULL, in his official and individual capacity, and
RICK MCMORAN, in his official and individual capacity,

     Defendants.

---

**ORDER**

---

1

Before the Court are Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 99) and the State Defendants' Partial Motion to Dismiss Plaintiff's Fourth Amended Complaint and Request for *Trinity* Hearing On Plaintiff's First Request for Relief (ECF No. 100).[1] For the reasons set forth below, the Court GRANTS Defendants' jurisdictional dismissal motion, and GRANTS in part and DENIES in part the State Defendants' partial motion to dismiss.

## I. BACKGROUND[2]

A brief summary of the Fourth Amended Complaint's relevant allegations suffices. Mr. Hoffschneider alleges that he is "currently committed" at the Colorado Mental Health Institute at Pueblo (the "Institute") (ECF No. 98 at 3 ¶ 3).[3] Prior to his commitment, Mr. Hoffschneider was charged with several criminal offenses (*see id.* at 7 ¶ 24). A state court judge accepted his "Not Guilty by Reason of Insanity" plea to these charges, and committed him to the Institute until he was "fit for release" (*id.*).

Mr. Hoffschneider was admitted to the Institute on October 15, 2018 (*id.* at 8 ¶ 25(d)(i)). On December 20, 2018, a court order required the Institute to conduct a release examination and file a written report with the court regarding Mr. Hoffschneider's "risk assessments" by March 20, 2018 (*id.* at 9 ¶ 25(d)(ii)). Seven days before the scheduled hearing, Defendant Marshall informed

---

[1] The "State Defendants" include all Defendants except Defendant Soyeun Chu (ECF No. 100 at 1).

[2] The background facts are taken from the well-pleaded allegations in Mr. Hoffschneider's Fourth Amended Complaint. *See, e.g., Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1203 n.1 (10th Cir. 2022).

[3] Mr. Hoffschneider alleges that he is currently committed at the Institute at one point in the Fourth Amended Complaint, while later appearing to allege that he is no longer committed at the Institute (*see, e.g.,* ECF No. 98 at 7, 42 ¶¶ 25, 75). The Court notes this apparent contradiction in the Fourth Amended Complaint's allegations, but need not resolve it in ruling on the instant dismissal motions.

the court that risk assessments are "not usually conducted on patients until they have resided at [the Institute] for at least six months" (*id.*).

Time passed. In May 2019, the Institute filed an "Unconditional Release Examination," in which Defendant Abel diagnosed Mr. Hoffschneider with "antisocial personality disorder with narcissistic traits," despite Mr. Hoffschneider having no history of this diagnosis (*id.* at 10 ¶ 25(d)(iv)). At that time the Institute also completed a "Violence Risk Assessment and Management Report," in which Defendant Williams made several false statements regarding Mr. Hoffschneider's mental state, risk and history of violence, and alleged attempts to escape from custody (*id.* at 25(d)(v)). This falsified assessment was part of a conspiracy, perpetuated by Defendants, to prolong Mr. Hoffschneider's confinement at the Institute (*see, e.g., id.* at 11 ¶ 25(d)(vii)).

Mr. Hoffschneider's rescheduled release hearing was held in December 2019 (*see, e.g., id.* at 13 ¶ 25(d)(xiii)). The state court judge denied release, based in part on Defendant Abel's representations at the hearing regarding Mr. Hoffschneider's antisocial personality disorder diagnosis and treatment (*id.* at 13–14 ¶ 25(d)(xiii)). A current Institute employee has stated that, fundamentally, Mr. Hoffschneider is being held "not for a mental illness, but because staff at [the Institute] personally have issues with him advocating for himself" (*id.* at 16 ¶ 29).

In February 2021, the state court judge ordered the Institute to conduct a release evaluation of Mr. Hoffschneider in advance of a June 2021 release hearing (*see, e.g., id.* at 39–40 ¶ 73). Defendants Marshall and Pounds commissioned an evaluation of Mr. Hoffschneider under false pretenses, resulting in an improperly conducted evaluation that "failed to include many requirements for a release evaluation" (*id.* at 40 ¶ 73). At the June 2021 release hearing, the state

court judge remarked that the release evaluation did not comply with her prior order, and "stopped the release hearing because, by statute, [she] could not order the release" of Mr. Hoffschneider "because [the Institute] disobeyed her order to conduct a release evaluation" (*id.* at 40–41 ¶ 73). This resulted in Mr. Hoffschneider's prolonged confinement (*id.* at 41 ¶ 73).

The state court judge held a status hearing in July 2021, ultimately resulting in an order that Mr. Hoffschneider should be conditionally released from the Institute (*id.* at 41 ¶ 74). At this hearing, the state court judge "expressed confusion and concern" regarding the dates of the release evaluation because "the date of the release evaluation preceded the date of [the judge's] order" for the Institute to conduct the evaluation (*id.*). Defendants Marshall and Pounds further failed to notify Mr. Hoffschneider that information he provided in the release evaluation "could be disclosed to the Jefferson County District Court" (*id.* at 42 ¶ 75). As a result of Defendants Marshall and Pounds's conduct, Mr. Hoffschneider's Institute confinement was delayed for two weeks (*id.* at ¶ 77). The way Defendants Marshall and Pounds conducted Mr. Hoffschneider's release evaluation further resulted in his inability to "be heard and to argue against" the Institute's "recommendation for conditions for release," and the prolongation of a hearing regarding his conditional release conditions until January 2022 (*id.* at ¶ 75).[4]

Much of this case's procedural history is summarized in the Court's September 8, 2022, Order sustaining in part Defendants' Objection to the United States Magistrate Judge's Order terminating Defendants' previously filed Motions to Dismiss and granting Mr. Hoffschneider's

---

[4] On page forty-two of the Fourth Amended Complaint, Mr. Hoffschneider lists a second "Paragraph 75" between Paragraphs "78" and "79." This citation is to "Paragraph 75" situated between "78" and "79."

Motion for Leave to File Fourth Amended Complaint (ECF No. 71).[5] After showing cause as to why he failed to meet the Court's filing deadline for his amendment and did not seek leave from the Court to do so, Mr. Hoffschneider subsequently filed his—and the operative—Fourth Amended Complaint (ECF No. 98; *see also* ECF Nos. 87 and 92). Mr. Hoffschneider asserts two claims: one state law claim for extreme and outrageous conduct against all Defendants, and another for violations of 42 U.S.C. § 1983 against Defendants Marshall and Pounds (*see* ECF No. 98). Defendants and the State Defendants filed the instant dismissal motions in October 2022 (ECF Nos. 99 and 100). The motions are fully briefed.

## II. ANALYSIS

Having considered Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and the State Defendants' Partial Motion to Dismiss Plaintiff's Fourth Amended Complaint and Request for *Trinity* Hearing On Plaintiff's First Request for Relief, related briefing, Fourth Amended Complaint, and relevant legal authority, the Court grants Defendants' jurisdictional dismissal motion and grants in part and denies in part the State Defendants' partial dismissal motion. The Court considers these motions in turn, beginning with the State Defendants' partial dismissal motion.

### A. Partial Motion to Dismiss

The State Defendants move to dismiss Mr. Hoffschneider's § 1983 claim on qualified immunity grounds, arguing that Defendants Marshall and Pounds are entitled to qualified

---

[5] The Court also denied the State Defendants' Motion for Partial Reconsideration of this Order on September 26, 2022 (*see* ECF No. 86).

immunity (*see, e.g.,* ECF No. 100 at 8). After setting forth the applicable legal standards, the Court turns to the State Defendants' qualified immunity arguments.

### 1. *Legal Standards*

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Allegations are read in "the context of the entire complaint" and taken as a whole. *See Chilcoat*, 41 F.4th at 1207 (quotation omitted). To survive a motion to dismiss, a complaint must allege facts, accepted as true and viewed in the light most favorable to the plaintiff, to state a claim to relief that is plausible on its face. *See, e.g., Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). A plausible claim is one that allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing a claim's plausibility, courts need not accept "conclusory statements of law." *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). "An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement." *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264 (10th Cir. 2023) (quotation omitted). "[G]ranting [a] motion to dismiss is a harsh remedy which must be cautiously studied," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (second alteration in original) (quotation omitted).

When a defendant asserts qualified immunity, the plaintiff must show that the defendant (1) violated a statutory or constitutional right and (2) the right was "clearly established" at the time of the defendant's challenged conduct. *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019)

(quotation omitted). Courts may address either qualified immunity prong first. *Panagoulakos v. Yazzie*, 741 F.3d 1126, 1129 (10th Cir. 2013). For the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision "on point," or the "weight of authority from other courts must have found the law to be as the plaintiff maintains." *Halley v. Huckaby*, 902 F.3d 1136, 1149 (10th Cir. 2018) (quotation omitted). A plaintiff is not required to cite a case with "identical facts" to demonstrate a clearly established right, *Kapinski v. City of Albuquerque*, 964 F.3d 900, 910 (10th Cir. 2020), but clearly established law must place the constitutional issue "beyond debate," *Mullenix v. Luna*, 577 U.S. 7, 16 (2015) (quotation omitted). In its analysis of a defendant's motion to dismiss, courts consider whether a complaint's well-pleaded factual allegations and related inferences allege a defendant violated a clearly established constitutional right. *See Sanchez v. Hartley*, 810 F.3d 750, 754 (10th Cir. 2016) (citation omitted); *see also Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014).

### 2. *Qualified Immunity*

In arguing that Defendants Marshall and Pounds are entitled to qualified immunity, the State Defendants contend that Defendants Marshall and Pounds did not violate Mr. Hoffschneider's constitutional rights, and that Mr. Hoffschneider cannot show he had a "clearly established" constitutional right (ECF No. 100 at 10, 15). Because the Court may address either argument first, *see Panagoulakos*, 741 F.3d at 1129, the Court first considers whether Mr. Hoffschneider's constitutional right was clearly established at the time of Defendants Marshall and Pounds's alleged misconduct.

***Clearly Established.*** In arguing that Mr. Hoffschneider cannot meet his burden of showing that his constitutional right was clearly established, the State Defendants essentially contend that

Defendants Marshall and Pounds's alleged decision to submit an improper release evaluation to the state court judge in connection to Mr. Hoffschneider's release proceedings—a "converted audit examination report"—did not give rise to a clearly established constitutional violation (*see* ECF No. 100 at 16). The State Defendants further argue that the state court judge accepted the release evaluation as "proper," and that Mr. Hoffschneider failed to allege that the state court judge "found the release examination itself was actually deficient" (*id.* at 11). Mr. Hoffschneider contends that Defendants Marshall and Pounds violated a clearly established constitutional right by failing to properly conduct his release evaluation, and that the "right to be released when a patient at a mental health hospital is not a danger to themselves or others is clearly established under Tenth Circuit precedent" (ECF No. 105 at 4–7).[6] The Court agrees with the State Defendants.

The gravamen of Mr. Hoffschneider's § 1983 claim is that Defendants Marshall and Pounds violated his constitutional rights by "intentionally not conducting a release evaluation properly which prevented [Mr. Hoffschneider's] rightful and proper release" (ECF No. 98 at 39–40 ¶ 73). Mr. Hoffschneider specifies: Defendants Marshall and Pounds hired Doctor Patrick Fox to perform a deficient "internal audit" submitted to the state court judge as a "release evaluation," resulting ultimately in his delayed release from the Institute for two weeks (*see id.* at 40–42 ¶¶ 73–74). Mr. Hoffschneider cites two cases in support of his argument that he has met his burden of showing that his constitutional rights were clearly established: *O'Connor v. Donaldson*, 422 U.S. 563 (1975), and *Quintero v. Encarnacion*, 242 F.3d 390 (10th Cir. 2000). For the reasons set forth

---

[6] Mr. Hoffschneider also argues, citing the Court's previous objection and reconsideration orders, that the Court has already determined that the alleged constitutional violation was clearly established (*see* ECF No. 105 at 6). Not so. As the State Defendants correctly observe, the Court has never determined whether Defendants Marshall and Pounds are entitled to qualified immunity on the § 1983 claim Mr. Hoffschneider asserts against them (ECF No. 107 at 3; *see also* ECF Nos. 82 and 86).

below, these cases do not establish that the alleged constitutional right Defendants Marshall and Pounds violated by "purposefully conducting the release evaluation improperly" and "preventing [Mr. Hoffschneider's] release" was clearly established (ECF No. 105 at 5, 7).

First, *O'Connor* distinguishably concerned an individual who was "civilly committed to confinement . . . against his will for nearly 15 years." 422 U.S. at 564. Against *O'Connor*'s factual backdrop, the Supreme Court determined that "[the] case raise[d] a single, relatively simple, but nonetheless important question concerning every man's constitutional right to liberty." *Id.* at 573; *see also id.* (characterizing "the issue before the Court [as] a narrow one"). Asking whether "the State may confine the mentally ill," the Supreme Court answered: "a State cannot constitutionally confine without more a nondangerous individual who is capable of surviving safely in freedom by himself or with the help of willing and responsible family members or friends." *Id.* at 576. As the State Defendants contend, not only is *O'Connor* factually distinguishable, but to the extent *O'Connor* identified and defined any constitutional right it did so at a level insufficiently particularized to the alleged misconduct in Mr. Hoffschneider's Fourth Amended Complaint (*see* ECF No. 107 at 4–7). *See also, e.g., Mullenix*, 577 U.S. at 12 ("The dispositive question is whether the violative nature of *particular* conduct is clearly established . . . . This inquiry must be undertaken in light of the *specific context* of the case, not as a broad general proposition." (second emphasis added) (quotations omitted)); *City of Tahlequah, Oklahoma v. Bond*, 142 S. Ct. 9, 11 (2021) ("It is not enough that a rule be suggested by then-existing precedent.").

Second, *Quintero*—an unpublished Tenth Circuit decision—affirmed the straightforward principle that "it [is] unconstitutional for a State to continue to confine a harmless, mentally ill person." 242 F.3d 390, 2000 WL 1761030 at *3 (citing *Foucha v. Louisiana*, 504 U.S. 71, 77

(1992)). *Quintero* went on to affirm the denial of dismissal of a claim based on qualified immunity grounds because "the right to be released was clearly established and the fourth amended complaint allege[d] that [the plaintiff] was not a danger to herself or others and that she was entitled to be released." *Id.* (citation omitted). To be sure, *Quintero* identified a constitutional right "to be released" in the case's factual context. *Id.* But the Court agrees with the State Defendants that Mr. Hoffschneider's reliance on *Quintero* to meet his burden of showing his constitutional rights were clearly established is misplaced (*see* ECF No. 107 at 4–7). At bottom, the right *Quintero* identifies is not "particularized" to the facts of Mr. Hoffschneider's case. *Est. of Beauford v. Mesa Cnty., Colorado*, 35 F.4th 1248, 1268 (10th Cir. 2022); *see also D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018) (determining that the "'clearly established' standard . . . requires a high 'degree of specificity'") (quoting *Mullenix*, 136 S. Ct. at 309). Moreover, *Quintero* is unpublished. This further undermines Mr. Hoffschneider's contention that *Quintero*—coupled only with *O'Connor*—demonstrates that his alleged constitutional violation was clearly established. *See, e.g., Mecham v. Frazier*, 500 F.3d 1200, 1206 (10th Cir. 2007) ("An unpublished opinion, moreover, even if the facts were closer, provides little support for the notion that the law is clearly established on this point.").

In sum, the Court agrees with the State Defendants that Mr. Hoffschneider has failed to meet his burden of showing that the constitutional rights Defendants Marshall and Pounds allegedly violated were clearly established (*see* ECF Nos. 100 at 16–18 and 107 at 4–8).

***Constitutional Violation.*** To overcome the State Defendants' assertion of qualified immunity, Mr. Hoffschneider must meet his burden on both qualified immunity prongs. *See Cummings*, 913 F.3d at 1239. Because, as discussed above, Mr. Hoffschneider has failed to identify caselaw that clearly establishes his rights and places the constitutional issue "beyond

debate," *Mullenix v. Luna*, 577 U.S. at 16 (quotation omitted), the Court need not address the State Defendants' arguments regarding Mr. Hoffschneider's failure to adequately allege a constitutional violation (*see* ECF No. 100 at 10–14). *See also Cummings*, 913 F.3d at 1242 (declining to "reach the first prong of the qualified-immunity analysis" where the plaintiffs "failed to identify clearly-established law" as required under the second qualified immunity prong).

* * *

For the reasons set forth above, Mr. Hoffschneider has failed to meet his burden on the "clearly established" qualified immunity prong, and therefore Defendants Marshall and Pound are entitled to qualified immunity on Mr. Hoffschneider's § 1983 claim. Accordingly, Mr. Hoffschneider's § 1983 claim is dismissed with prejudice. *See, e.g., Whitington v. Lawson*, No. 06-CV-00759-LTB-CBS, 2009 WL 3497791, at *1 (D. Colo. Oct. 29, 2009), *aff'd*, 424 F. App'x 777 (10th Cir. 2011) (dismissing claims with prejudice "under the doctrine of qualified immunity" where the plaintiff failed show that any defendant "violated a clearly-established constitutional right"). Because Defendants Marshall and Pound are entitled to qualified immunity—and for the reasons discussed further below in the Court's analysis of the Defendants' jurisdictional dismissal motion—the Court denies the State Defendants' request for a hearing pursuant to *Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo. 1993), as moot (ECF No. 100 at 18).[7]

## B.  Jurisdictional Motion

Defendants move to dismiss Mr. Hoffschneider's claims under Federal Rule of Civil Procedure 12(b)(1) (*see* ECF No. 99). In their jurisdictional dismissal motion, Defendants contend

---

[7] In doing so, the Court makes no determination as to whether Colorado procedural law regarding Colorado's Immunity Act and *Trinity* hearings applies in federal court. *Cf. Schmitz v. Colorado State Patrol*, 841 F. App'x 45, 50 (10th Cir. 2020) (stating that an "abbreviated review suggest[ed] that Colorado's procedural law" regarding the Immunity Act and *Trinity* hearings "doesn't apply [in federal court]").

that—if the Court concludes that dismissal of Mr. Hoffschneider's § 1983 claim is warranted—that it should decline to exercise supplemental jurisdiction over Mr. Hoffschneider's state law claim for extreme and outrageous conduct (*id.* at 14). Mr. Hoffschneider argues that it is proper for the Court to exercise its discretion and retain supplemental jurisdiction over his extreme and outrageous conduct claim (*see, e.g.,* ECF No. 104 at 6). The Court agrees with Defendants.[8]

Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction . . . ." "The exercise of supplemental jurisdiction is discretionary." *Birdwell v. Glanz*, 790 F. App'x 962, 963–64 (10th Cir. 2020) (citation omitted). 28 U.S.C. § 1367(c) "enables a federal district court to forgo exercising supplemental jurisdiction over a related state law claim if the district court has dismissed all claims over which it has original jurisdiction." *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1314 (10th Cir. 2021) (quotation omitted); *see also id.* ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." (quotation omitted)).

As discussed above, dismissal of Mr. Hoffschneider's only federal claim is warranted. Therefore, his only remaining claim in this action is his state law claim for extreme and outrageous conduct. As Mr. Hoffschneider states in his Fourth Amended Complaint, the Court has subject matter jurisdiction over his state law claim pursuant to § 1367 (ECF No. 98 at 3 ¶ 1). Under § 1367, the Court may "decline to exercise supplemental jurisdiction" where—as here—it "has

---

[8] Because the Court agrees that exercising supplemental jurisdiction over Mr. Hoffschneider's state law claim is improper, given that dismissal of the § 1983 claim is warranted, the Court need not reach Defendants' arguments regarding Mr. Hoffschneider's § 1983 claim contained in the jurisdictional dismissal motion (*see, e.g.,* ECF No. 99 at 14–15).

dismissed all claims over which it has original jurisdiction." § 1367(c)(3). Exercise of this discretion is appropriate here. Given the nature of Mr. Hoffschneider's claim and its early stages, the interests of comity, the convenience of the parties, judicial economy, and fairness dictate that Mr. Hoffschneider's claim is better adjudicated in state court. *See Birdwell*, 790 F. App'x at 964 ("In exercising this discretion, federal courts should consider comity, convenience, economy, and fairness." (citation omitted)); *see also id.* ("When the federal claims disappear early in the litigation, a federal court should generally decline to exercise supplemental jurisdiction." (citation omitted)). Accordingly, the Court—in light of its dismissal of Mr. Hoffschneider's § 1983 claim— declines to exercise supplemental jurisdiction over his extreme and outrageous conduct claim. *See, e.g., Strain v. Regalado*, 977 F.3d 984, 997 (10th Cir. 2020) ("[I]f the federal claims are dismissed before trial . . . the state claims should be dismissed as well." (quotations omitted)); *Crane*, 15 F.4th at 1314. Mr. Hoffschneider's state law claim for extreme and outrageous conduct is dismissed without prejudice. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (determining that when the balance of supplemental jurisdictional factors "indicates that a case properly belongs in state court . . . the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice" (citation omitted)).

### III. CONCLUSION

Consistent with the above analysis, Mr. Hoffschneider's § 1983 claim is DISMISSED WITH PREJUDICE and his state law claim for extreme and outrageous conduct is DISMISSED WITHOUT PREJUDICE. Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 99) is GRANTED, and the State Defendants' Partial Motion to Dismiss Plaintiff's

Fourth Amended Complaint and Request for *Trinity* Hearing On Plaintiff's First Request for Relief (ECF No. 100) is GRANTED in part and DENIED in part as moot.

DATED this 14th day of April 2023.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge